IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DEBORAH (FIORE) LABATY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.  SA-13-CV-389-XR |
| § | |
| UWT, INC.; UNITED WESTERN § | |
| ADMINISTRATIVE SERVICES, INC.; § | |
| SUPERIOR GOLD GROUP; PAUL § | |
| MAXWELL; JEFFREY KELLEY; and § | |
| BRUCE SANDS, § | |
| § | |
| *Defendants*. § | |

**ORDER**

On this day the Court considered Plaintiff's motion for leave to file an amended complaint (Doc. No. 14).  For the following reasons, Plaintiff is granted leave to amend.  As a result, Defendants' original motion to dismiss (Doc. No. 8) is denied as moot.  The Court also considered the parties' written advisories on whether to stay the case pending resolution of Co-Defendants' bankruptcy.  After careful consideration, the Court declines to stay the case against individual Defendants Paul Maxwell and Jeffrey Kelley.

**I. Background**

**A. Factual Background**

In 2007, Defendant Superior Gold Group ("SCG"), a Nevada LLC with principal place of business in California, began running radio advertisements around the country encouraging individuals to reinvest their retirement accounts in gold and other precious metals.  In April 2009, Deborah Labaty ("Plaintiff"), a Texas resident, heard such an advertisement and contacted SCG.  During the initial consultation, the SCG representative informed Plaintiff that in order to

1

invest in gold, she would need to open a Self-Directed Individual Retirement Account ("SDIRA") with Sterling Trust Company, a Texas Corporation.

When Plaintiff decided to invest in precious metals, the SCG representative sent her an application package. This packet included a "Transfer Request Form," which Sterling required in order to obtain Plaintiff's funds from their previous custodian. In addition, there was also a "Wire Transfer Letter," which represented that Sterling's purpose in obtaining the funds was to invest them in precious metals. Prop. Am. Compl. ¶ 24. The application also included a "Shipping Agreement," in which SCG promised to invest in gold once funds had been received. Plaintiff signed the documents and forwarded the completed package to Sterling Trust. Shortly thereafter, Sterling caused Plaintiff's retirement account to be transferred from the previous custodian, Vanguard, to Sterling Trust. Prop. Am. Compl. ¶ 75. The funds were then wired by United Western Bank (Sterling Trust's parent company at the time) to SCG's California bank. Thereafter, the funds came under the control of SCG and its CEO Bruce Sands. The money then allegedly disappeared.

By July 2009, Sterling Trust had opened over 150 SDIRA accounts that funneled money to SCG. Defendant Kelley was at that time the Chief Operating Officer of Sterling Trust. Defendant Maxwell was its CEO. Around this time, Defendants are alleged to have begun a complex cover-up. Sterling Trust Company initially sold its assets to Equity Trust Company, a South Dakota Corporation, for $61 million. The proceeds from the sale were funneled up to United Western Bankcorp. Sterling Trust then changed its name with the Texas Secretary of State to "UW Trust Company." Prop. Am. Compl. ¶ 48. Subsequently, Maxwell incorporated a "United Western Trust Company" in South Dakota, and merged UW Trust out of existence into

the new company. Prop. Am. Compl. ¶58.  At the same time, all of the UW Trust employees (formerly of Sterling Trust) became employees of Defendant United Western Administrative Services. Equity Trust Company changed its name to "Sterling Trust Company" and began operating out of the old Sterling Trust offices in Waco, Texas.  Finally, on October 27, 2011, Defendant Maxwell incorporated Defendant UWT in Colorado.  UWT and United Western Trust Company merged in November of that year.  Through this complex chain of corporate transactions, UWT Inc. and United Western Administrative Services appear to be the successors in interest to Sterling Trust.

**B. Procedural Background**

On May 6, 2013, this action was removed to this Court.  Thereafter on May 17, 2013, Defendants Kelley and Maxwell filed a motion to dismiss for failure to state a claim under Rule 12(b)(6).  That same day, Defendant UWT and United Western Services filed a suggestion of bankruptcy. This Court then ordered the parties to submit written advisories on whether the case should proceed against the non-bankrupt Defendants.  Due to this request, Plaintiff twice submitted motions for an unopposed extension to respond to the motion to dismiss. On June 27, 2013, Plaintiff sought leave of court to amend her complaint.  Defendants opposed leave, arguing that the Proposed Amended Complaint was "without legal foundation" and should be denied. As of August 19, 2013, Defendants SCG and Bruce Sands have not filed an appearance.[1]

## II. Plaintiff's Motion for Leave to Amend

**A.  Legal Standard**

---

[1] Defendants Sands and SCG were served on July 2, 2013. Doc No. 18-19.

Under Rule 15(a)(2), a party may amend its complaint with leave of court, which must "freely give leave when justice so requires." However, leave to amend is not automatic. *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). The decision to grant or deny a motion to amend is within the sound discretion of the trial court. *Id.* In exercising its discretion, the trial court considers such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, and futility of amendment. *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). With respect to the futility of amendment, leave should not be granted where "the theory presented in the amendment lacks any legal foundation." *Jamieson v. Shaw,* 722 F.2d 1205, 1208 (5th Cir. 1985). In the course of making this assessment, it is appropriate for the court to consider whether the amended complaint would survive a 12(b)(6) motion to dismiss. *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While detailed factual allegations are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. However, a complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 556.

**B. Analysis**

As an initial matter, the Court finds that the Proposed Amended Complaint was not motived by bad faith, a desire to delay the proceedings, or any other failure on the part of the Plaintiff.[2] The main question is whether leave should be denied because the claims are "futile." The Court addresses this issue by conducting a 12(b)(6)-like analysis of the claims. Plaintiff asserts claims against all the Defendants for: (1) violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), (2) fraud, (3) conversion, (4) negligence, (5) negligent misrepresentation, and (6) violations of the Texas Deceptive Trade Practices Act ("DTPA"). Defendants Kelley and Maxwell oppose leave to amend on the grounds that the claims stated above would be futile. Since the factual allegations in the Proposed Amended Complaint would very likely withstand a 12(b)(6) motion to dismiss, the claims are not futile and leave should be granted.

1. <u>RICO</u>:

"The Racketeering, Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968, creates a civil cause of action under section 1964(c) against those injured by violations of section 1962(a)-(d)." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 n.1 (5th Cir. 1988). In their simplest terms, sections 1962(a), (b), (c) and (d) state that:

(a) a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;
(b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering;
(c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and
(d) a person cannot conspire to violate subsections (a), (b), or (c).

---

[2] After the Defendants filed their motion to dismiss on May 17, 2013, this Court requested the parties to submit written advisories on whether the case should be stayed during the bankruptcy proceeding by June 3, 2013. This intervening requirement may offer explanation for why Plaintiff did not amend within the 21-day period after Defendants' motion was filed when leave of court is not required.

*Abraham v. Singh*, 480 F.3d 351, 354-55 (5th Cir. 2007).  Plaintiff sues under subsections (c) and (d) and has sufficiently pled that Kelley and Maxwell are "persons" within the meaning of the statute. Prop. Am. Compl. ¶ 66.  In addition, Plaintiff proffers facts indicating that Sterling Trust and SCG "operated as an associated-in-fact enterprise." *Id*. at 71.  Sterling Trust allegedly opened more than 150 SDIRAs for individuals seeking to invest in SCG products (precious metals).[3] "'Racketeering activity' is defined by reference to various state and federal offenses, each of which subsumes additional constituent elements which the plaintiff must plead." *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  In this case, Plaintiff alleges various acts of wire and mail fraud as the predicate "racketeering activity" upon which liability is based. Prop. Am. Compl. ¶ 108, 111.

      The federal wire fraud statute requires: "(1) a scheme to defraud and (2) the use of, or causing the use of, wire communications in furtherance of the scheme." *United States v. Ingles*, 445 F.3d 830, 838 (5th Cir. 2006) (discussing 18 U.S.C. §1343).  The 9(b) requirement applies to RICO cases where the predicate act is fraud.  *Tel-Phonic Servs, Inc. v. TBS Intl Inc*. 975 F.2d 1134, 1139 (5th Cir. 1992).  Under Rule (9)(b) plaintiffs are required to plead fraud claims with heightened particularity.  The Fifth Circuit has held that this "requires the plaintiffs to set forth the who, what, when, where and how of the alleged fraud." *U.S. v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 2003). To meet the Rule 9(b) requirement for wire fraud, Plaintiff must allege with particularity a scheme to defraud, as well as use of the wires to further that scheme.

---

[3] Sterling Trust played an important and integral role in this alleged scheme. Based upon the current tax code, individuals would not have been able to invest their retirement accounts in SCG without incurring the tax penalty associated with early withdrawal had they not been able to channel their investment through a SDIRA or like product. This would have made SCG's products much less appealing for their target audience.

The Proposed Amended Complaint describes the overall scheme to defraud in significant detail, as even Defendants acknowledge. Doc. No. 21 at 5. Sterling Trust and the individual Defendants were active participants in this scheme. Allegedly at Kelley and Maxwell's direction, Sterling employees opened and maintained SDIRA accounts for the fraud victims. Sterling obtained the victims' funds from their previous custodians. Ultimately, Sterling wired the money to SCG, from where it vanished.

As to the second element, the Proposed Amended Complaint alleges use of the wires (and mails) to further that fraud. The allegations do not want for particularity. For example, Plaintiff states that she received her Sterling Application by email (from SCG representative Letitia Acosta) at 2:46 P.M. on April 15, 2009. Prop. Am. Compl. ¶ 80. Moreover, Plaintiff pleads that Defendants used the wires to obtain Plaintiff's money from her previous custodian, Vanguard, and to transfer the funds to SCG. Accordingly, Plaintiff has met her burden of pleading fraud with particularity. Finally, the Proposed Amended Complaint details a "pattern of racketeering activity" because it describes how individuals similarly situated to Plaintiff lost their retirement accounts in much the same manner. Prop. Am. Compl. ¶118-149.

2. Fraud:

In addition to RICO claims based on fraud, Plaintiff asserts common law and statutory fraud claims against Defendants. "The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered

7

injury." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). "Failing to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009) (per curiam). As with the fraud claims that served as the predicate for RICO, the Rule 9(b) requirements apply to these claims.

From the factual allegations it appears that many of the material misrepresentations were made by SCG. However, there are sufficiently particular allegations of misstatements and omissions made by Sterling Trust to suggest the fraud claim is not futile. Plaintiff was required to sign an "IRA Transfer Request" form which was allegedly prepared by Sterling employees (at the direction of Kelley and Maxwell) and included the Sterling Logo. Am. Compl. ¶ 87. In this document, Sterling Trust held itself out to be a fiduciary with respect to Plaintiff's retirement account. Plaintiff alleges that this statement was false because Sterling never intended to act as a fiduciary, and that she relied on this statement when deciding to invest with Sterling. *Id.* Sterling also sent Plaintiff a "Wire Transfer Letter" representing that "a wire transaction will take place immediately from Sterling Trust, your new custodian, to SCG." Am. Compl. ¶ 94. Plaintiff pleads that Sterling Trust made this statement in order to induce her to invest in their scheme with full knowledge that the funds would never be invested. Accordingly, Plaintiff has made sufficiently precise allegations of fraud to meet the 9(b) standard.

The Court next addresses whether Kelley and Maxwell, as corporate officers, are liable for Sterling Trust's fraudulent conduct. In general, a corporate officer may be held personally liable for corporate wrongdoing in which he is an active participant or has knowledge of the tortious conduct, either actual or constructive. *Leyendecker & Assocs., Inc. v. Wechter,* 683

S.W.2d 369, 375 (Tex. 1984). The Proposed Amended Complaint contains several allegations of Kelley and Maxwell's personal involvement in the scheme. First, Plaintiff alleges that "Kelley and Maxwell instructed Sterling Trust Company's employees … to transmit the Traditional IRA Request Form … to Vanguard" in order to obtain her retirement account. Prop. Am. Compl. ¶ 109. Moreover, the Proposed Amended Complaint alleges that Kelley and Maxwell "willfully instructed" Sterling employees to wire the funds to SCG and Sands, with full knowledge that it would never be invested. Prop. Am. Compl ¶ 112. Finally, Plaintiff alleges that Kelley and Maxwell had Sterling Trust "carry each empty account on its book as an asset," as well as "send its empty account holders quarterly statements." Prop. Am. Compl. ¶ 34. Together, the claims concerning Kelley and Maxwell's conduct suggests that they were active participants in the scheme, and therefore the Proposed Amended Complaint sufficiently states a claim for fraud against them.

3. Conversion:

Plaintiff also asserts a cause of action for conversion. A claim for conversion requires a plaintiff to allege that the defendant exercised "dominion and control" over the plaintiff's property unlawfully or without authorization in a manner inconsistent with the plaintiff's rights as owner. *Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334. 344 (Tex. App.–San Antonio, 2000, pet. denied). With respect to Plaintiff's property, Sterling Trust allegedly exercised "dominion and control" when they wired it to SCG's account. Plaintiff was thereafter permanently deprived of her property. A more difficult issue is whether that act was authorized, thereby removing Defendants from liability for conversion. Defendants argue that Plaintiff authorized them to wire the funds to SCG. In the "Wire Transfer Letter" and various other

documents, Plaintiff did indeed authorize this transaction. However, this authorization was for the express purpose of procuring the precious metals. The Proposed Amended Complaint alleges that Defendants never intended for this investment to occur. Accordingly, Defendants alleged exercise of control over the property falls outside of the scope of what Plaintiff authorized. Therefore, Plaintiff has stated a claim for conversion.

4. Negligence / Negligent Misrepresentation:

Plaintiff also asserts negligence and negligent misrepresentation clams against Defendants. "To sustain a negligence action, the plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach." *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). In this case, the main issue concerns what duty, if any, Defendants owed to Plaintiff. Plaintiff appears to plead that Defendant owed her a duty of reasonable care without specifying any legal authority for that duty. Prop. Am. Compl. ¶ 87. While this claim alone would be insufficient to establish a legal duty, Plaintiff also pleads that the Defendants' owed her a fiduciary duty. Doc. No. 15. Specifically, Plaintiff references the IRA Transfer Request form in which Sterling held itself out as a fiduciary. Prop. Am. Compl. ¶ 87. Kelley and Maxwell raise questions about whether, in fact, such a duty existed. Nonetheless, at this stage the Court takes the allegations in the complaint as true and accordingly finds that the negligence claim is non-frivolous.

A claim for negligent misrepresentation will exist when "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or

communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Here, the Proposed Amended Complaint alleges false representations made by Sterling Trust in the course of its business. In particular, Sterling Trust represented that it would transfer Plaintiff's funds to be invested in gold. Since over 150 Sterling customers allegedly lost their investments once their money was wired to SCG, Sterling either knew or should have known that the statement was false. Sterling Trust held itself out to the public as a reputable trust company. Therefore, Plaintiff's reliance on this representation was reasonable. Finally, Plaintiff suffered loss based upon this reliance, because had the representation not been made she would not have wired her money to Sands/SCG. Plaintiff has therefore stated a claim for negligence and negligent misrepresentation.

5. DTPA Claim:

Plaintiff also asserts a claim under the Texas DTPA. The elements of a valid DTPA complaint are: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. *Hugh Symons Grp., v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002). In this case, Plaintiff was a consumer for retirement investment products. The Defendants allegedly engaged in misleading acts by representing to her that her trust account would be used to purchase precious minerals. These acts of misrepresentation directly caused her to invest in SCG through Sterling, and thereby suffer damages when her investments disappeared. The confirmatory "Wire Transfer Letter" that Plaintiff received bearing the Sterling logo constitutes a sufficiently precise

allegation of a deceptive act, and is therefore not a "threadbare recital" of the DTPA elements as Defendant suggests.

6. Statute of Limitations:

In their response to Plaintiff's motion for leave to amend, Kelley and Maxwell assert that the negligence, negligent misrepresentation, and DTPA claims are time-barred. Doc. No. 21 at 5. Generally, a cause of action accrues when the plaintiff suffers injury.[4] *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). However, under the equitable doctrine of fraudulent concealment, the limitations period is tolled when the defendant uses deception to conceal the underlying tort. *Glover v. Union Pacific R.R. Co.*, 187 S.W.3d 201, 217 (Tex.App–Texarkana 2006, pet. denied). In the Proposed Amended Complaint, Plaintiff alleges that she was deceived by the "Quarterly Reports" prepared and sent by Sterling Trust. Prop. Am. Compl. ¶36. The Quarterly Reports listed the account balance as the sum of the original investment. Defendants argue that the Reports made clear that no precious metals had been acquired, and that therefore there was no concealment of the fact that no metals had been purchased. This argument misses the mark. Regardless of what the Reports said about the gold, they indicated to Plaintiff that she still had possession of funds in the amount equal to her original investment. Under these circumstances, Plaintiff has sufficiently alleged fraudulent concealment.

7. Economic Loss Doctrine:

As a final matter, Defendants argue that the Plaintiff's tort claims are barred by the economic loss doctrine. Doc. No. 21 at 10. The economic loss doctrine precludes a plaintiff

---

[4] DTPA claims accrue when a person discovers or in the exercise of reasonable diligence should have discovered the deceptive act. TEX. BUS. & COM. CODE ANN. § 17.565

from recovering in tort when the only damages are economic losses caused by a failure to perform a contract. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-96 (Tex. 1991). The purpose of the rule is to prevent plaintiffs in pure contract cases from asserting plausible tort causes of action. *Wiltz v. Bayer Crop Science, Ltd. P'ship*, 645 F.3d 690, 696 (5th Cir. 2011). In contrast, it is not intended to preclude tort claims simply because some contract is involved. Here, Plaintiff has sufficiently alleged tort causes of action that are independent from any claim that Defendants are liable to her under the terms of the contract. The economic injury alleged here does not arise from any failure to perform a contract. Instead, the allegations focus on a fraudulent scheme that used contractual arrangements to further the fraud. Accordingly, the economic loss rule does not make the claims futile at this stage.

### III. The Bankruptcy Stay

This Court has considered the written advisories submitted by the parties addressing whether the bankruptcy stay should apply to the non-bankrupt parties. After taking the issue under advisement, the Court concludes that case against Kelley and Maxwell will proceed. Under 11 U.S.C. §362 a claims against Defendants UWT and United Western Administrative Services are automatically stayed during the pendency of their bankruptcies. As a general rule, the automatic stay does not apply to the bankrupt party's co-defendants. *Wedgeworth v. Fibreboard Corp.*, 706 F. 2d 541 (5th Cir. 1983). Courts generally recognize two exceptions to this baseline rule that the stay is not extended to co-defendants. First, the stay may be extended to co-defendants when there is an "actual relationship" with the debtor such that any judgment would actually apply to the bankrupt party. Second, courts have discretion to stay a case under these circumstances "in the interests of justice and in control of their docket." *Nat'l Oilwell*

*Varo, L.P. v. Mud King Prods.*, 2013 WL 1948766 (S.D. Tex. 2013).  As to the first factor, absent clear evidence that the bankrupt parties would be required to indemnify the individual defendants, there do not appear to be sufficient "unusual circumstances" to justify staying the case.  With respect to this Court's discretion to stay, Plaintiff suggests that permitting the case to go forward against individual defendants could make discovery difficult if the pertinent information is possessed by the parties in bankruptcy. Doc. No. 12.  The Court acknowledges this concern, but declines to issue the stay.  In granting leave to amend, the Court necessarily found that Plaintiff has a non-futile claim against Kelley and Maxwell as individuals for their participation in and direction of the fraudulent scheme.  Therefore, the case can and will proceed against them.

## Conclusion

In light of the foregoing analysis, the Court finds that the amendment would not be futile that the requirements of Rule 15 are met.  Accordingly, Plaintiff's motion for leave to amend (Doc. No. 14) is GRANTED.

As a result, Defendants' initial motion to dismiss (Doc. No. 8) is DENIED as moot.

After careful consideration, the case will proceed against Defendants Kelley and Maxwell.

SIGNED this 26th day of August, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE