UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DEBORAH (FIORE) LABATY, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No. SA-13-CV-389-XR |
| § | |
| UWT, INC., ET. AL, § | |
| § | |
| *Defendants.* § | |
| § | |

**ORDER**

On this day the Court considered Plaintiff's second Motion to Compel. Docket no. 124. For the following reasons, the Court DENIES the motion.

**I.   Background**

Plaintiff Deborah Labaty brought this action on February 22, 2013, against several defendants after she lost her life savings when she attempted to invest in earth metals and the earth metals were never delivered. She claims violations of civil RICO, 18 U.S.C. § 1962(c), (d) based upon predicate acts of mail and wire fraud, 18 U.S.C. § 1341 and § 1343, and money laundering, 18 U.S.C. § 1956 (a)(1)(B)(ii).

In April 2009, Labaty heard an advertisement by Defendant Superior Gold Group ("Superior") encouraging individuals to reinvest their retirement accounts in gold and other precious metals. She contacted Superior about investing. During the initial conversation, the Superior representative informed Labaty that in order to invest in gold, she needed to open a Self-Directed Individual Retirement Account ("SDIRA") with Sterling Trust Company ("Sterling"). By July 2009, Sterling had opened over 150 SDIRA accounts that distributed

1

money to Superior. Defendant Kelley was at that time the Chief Operating Officer of Sterling. Defendant Maxwell was its Chief Executive Officer.

Around this time, Defendants are alleged to have begun a complex cover-up. Sterling initially sold its assets to Defendant Equity Trust Company ("Equity Trust") for $61 million. The proceeds from the sale were "funneled up" to Defendant United Western Bankcorp. Equity Trust began operating as "Sterling Trust Company" in Texas.

On May 6, 2013, this action was removed to federal court. The Court granted Labaty leave to amend her complaint for a second time on November 21, 2013. Equity Trust was added to the case as a defendant in the second amended complaint. Docket no. 33. All parties participated in discovery that was extended twice. One day before the third discovery deadline, the case was stayed for 30 days because Labaty's attorney was very sick. *See* docket no. 89. The case was stayed for a total of 90 days because Labaty's attorney eventually succumbed to his illness and passed away. The Court permitted time for Labaty to find new counsel, for that counsel to assess the case, and for the parties to work out a new proposed scheduling order. The parties could not agree on a new schedule for the case, so the Court held a hearing on December 8, 2014, and gave the parties 90 days to conduct more discovery. As a result, the parties have taken additional depositions and produced more documents.

The Court held a status conference on February 19, 2015, where the parties argued Labaty's first motion to compel (docket no. 107) and set a deadline for dispositive motions. Docket no. 114. The Court denied Labaty's first motion to compel. The Court has since denied Labaty leave to file a third amended complaint (docket no. 115), except to drop certain claims, and Equity Trust leave to file a counterclaim (docket no. 112). Docket no. 119.

## II.      Second Motion to Compel

Discovery was set to close on March 15, 2015.  *See* docket no. 102.  On March 10, 2015, the Court quashed a deposition of a third-party witness and permitted the parties to schedule that deposition after the discovery deadline if necessary.  On March 15, the date of the fourth discovery deadline in this case, Labaty filed her second motion to compel certain documents and records from Equity Trust.  Docket nos. 123 and 124.  The Court took the motion to compel under advisement and ordered Defendants to respond by March 20, 2015.  The Sterling Defendants[1] responded on March 19, 2015.  Docket no. 126.  Equity Trust responded on March 20, 2015.  Docket no. 127.  Labaty replied on March 23, 2015.  Docket no. 129.

Federal Rule of Civil Procedure 37 controls motions to compel discovery or disclosure. FED. R. CIV. P. 37 ("A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.").  Rule 37 allows such a motion when a party fails to respond to a request for production.  *Id.*  Motions to compel must be filed timely before the discovery deadline as set out by a court's scheduling order, pursuant to Federal Rule of Civil Procedure 16.  Labaty's second motion to compel was timely because it was filed on March 15, 2015, the day before the most recent discovery deadline.

With this second motion to compel, Labaty seeks documents from Equity Trust relating to fourteen Sterling and Equity Trust accounts that allegedly invested in precious metals with Superior.  *See* docket no. 124 at 2-3.  Labaty also seeks the "names only" of the 186 Sterling and Equity Trust accountholders who invested in precious metals with Superior.  Labaty argues the information is critical for its RICO claims because these fourteen accounts help establish a lengthy pattern of fraudulent activity; a key component of a RICO claim.  *See id.*

---

[1] Jeffrey Kelley, Paul Maxwell, Michael McCloskey, Scot Wetzel, and Sterling.

The documents and information sought in the second motion to compel were sought in the first motion to compel, though the first motion to compel was broader. *See* docket no. 107. The Court denied the first motion to compel, stating that while the information Labaty sought might have some relevance, a proportionality analysis showed the relevance was far outweighed by the burden to Equity Trust. *See* FED. R. CIV. P. 26(b)(2)(C)(iii) ("[T]he court must limit the frequency or extent of discovery . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."); Transcript of Status Conference, Feb. 19, 2015, 26:16–21. Apparently in response to the cost and burden concern, Labaty submitted the second motion to compel documents for only fourteen accounts instead of 233 accounts. She also clarified her argument, saying she only needs those that might help establish the time requirement for her RICO claims. *See Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991).[2]

The Sterling Defendants argue, despite not being the party from which Labaty seeks discovery, that 1) the second motion to compel still fails the proportionality analysis prescribed in Rule 26(b)(2)(C)(iii), and 2) even if it does not, the Court should deny the motion because permitting this discovery is unfairly prejudicial to the Sterling Defendants. They argue it would

---

[2] "In H.J. Inc., the Court held 'that to prove a pattern of a racketeering activity a plaintiff ... must show that the racketeering acts are related and that they amount to or pose a threat of continued criminal activity.' 109 S.Ct. at 2900. The acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 109 S.Ct. at 2900. *See also Landry*, 901 F.2d at 432…. A party may show 'continuity over a closed period by proving a series of related predicates extending over a substantial period of time' or by proving "past conduct that by its nature projects into the future with the threat of repetition.' 109 S.Ct. at 2902…. Short-term criminal conduct is not the concern of RICO. *H.J. Inc*., 109 S.Ct. at 2902. Even where acts may support indictment for mail or wire fraud, they may be insufficient for RICO liability. *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 193 (5th Cir. 1990). 'Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the pattern] requirement.' *H.J. Inc.*, 109 S.Ct. at 2902." *Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d at 1463-64.

be unfairly prejudicial because this case has already had its discovery period extended four times, with great cost to all Defendants. If granted, according to the Defendants, this motion to compel would create at least fourteen additional witnesses Defendants might need to depose, incurring even more expenses and delaying the dispositive motion deadline yet again. Sterling Defendants also argue the Fifth Circuit has warned plaintiffs' counsel to state RICO claims cautiously and to do the investigative diligence before making the claim, rather than during or very late in discovery, citing *Chapman & Cole v. Itel Container Int'l*, 865 F.2d 676, 685 (5th Cir. 1989).

Equity Trust opposes the motion on similar grounds as Sterling, arguing the Court has already denied production of these documents and information using a proportionality analysis, and granting the motion would cause further cost and delay in this case as Defendants would need to depose any witness Labaty intends to call at trial based on the production. Equity Trust also states that "on receiving [the] Second Motion [to Compel] four days ago, Equity Trust promptly offered to stipulate to the first and last dates on which accounts were opened whose owners invested with Superior, but Labaty's counsel rejected the offered stipulation." Docket no. 127 at 2. Equity Trust argues this stipulation gets Labaty the facts she needs to establish a timeline for her RICO claims without cost or further delay, and Labaty's denial of the stipulation demonstrates she offered this motion to add costs for Equity Trust and unfairly delay the case.

In denying the first motion to compel, the Court warned Labaty's counsel was "going to need to provide [the Court] more than what" he was arguing at that time for the Court to compel production, albeit more evidence of the connection between the accountholders to Labaty, of the RICO claim generally, or an argument about cost reduction. *See* Transcript of Status Conference, at 26:24–25. While Labaty does ask for less production, reducing the burden on

5

Equity Trust, the production would still expend attorney hours, and Labaty's argument for why she needs the documents is the same. *See* docket no. 111-1 (stating producing documents for 227 accounts would take 460 attorney hours without accounting for checking for privileges). Labaty unconvincingly attempts to argue there is no need for delay after this production, stating she will call the least number of these witnesses at trial as possible, but that argument ignores Defendants' need to depose them during discovery to be properly prepared at trial. The Court already acknowledged the limited potential relevance of the information sought to the RICO claim. *See* Transcript of Status Conference, at 26. If the Court granted this motion without extending the discovery period again, this information's relevance would be very limited because neither party could properly investigate it. And the Court could not properly grant the motion without extending discovery because it would prejudice Defendants greatly to not allow them time to depose witnesses that may be called against them at trial.

The balance of the factors listed in Rule 26(b)(2)(C)(iii) weigh against Labaty. *RSUI Indem. Co. v. Am. States Ins. Co.*, No. CIV.A. 12-2820, 2015 WL 778874, at *2 (E.D. La. Feb. 18, 2015) (listing the Rule 26 factors as "1) the needs of the case; 2) the amount in controversy; 3) the parties' resources; 4) the importance of the issues at stake in the litigation; and 5) the importance of the proposed discovery in resolving the issues"). Given the extensive discovery and offered stipulation,[3] these documents are not needed in the case. The amount in controversy for the proportionality analysis, $160,000 plus punitive damages and attorney's fees, is relatively low compared to the cost of production, especially considering the costs already expended in this

---

[3] The Court orders Defendants to produce the information or documents that support the proposed stipulation discussed in docket no. 127. Docket no. 127 ("Equity Trust promptly offered to stipulate to the first and last dates on which accounts were opened whose owners invested with Superior."). The dates should be for accounts that invested in Superior but did not receive their gold. This information should suffice for Plaintiff to prove a pattern of a racketeering activity acts that are related. Further, the stipulation allows Plaintiff to establish that the acts are not isolated events and allows Plaintiff to establish continuity over a closed period by proving a series of related predicates extending over a substantial period of time. *See Calcasieu Marine Nat. Bank v. Grant*, *supra*.

case and the limited scope of the issues the production might address.[4] RICO and fraud statutes are important for the courts to enforce, as is determining who is responsible for an elderly individual losing her life savings in an alleged scam. But the proposed discovery would not go very far in resolving the main issues of the case: who or what is responsible for the fraud allegedly perpetrated on Labaty. The RICO time element is a peripheral issue that does not justify the proposed expense or delay. The resources of the parties are not in the record, so that factor is neutral.

Therefore, the Court denies Labaty's motion to compel documents related to these fourteen accounts from Equity Trust and for the names of the other accountholders because the potential relevance is outweighed by the burden to the Defendants when weighing the factors in Rule 26(b)(2)(C)(iii). Permitting the production would also unfairly delay the resolution of this case for a fourth time at potentially great expense to the Defendants.

### III.   Conclusion

For the above reasons, with the exception of ordering information or documents tendered pursuant to the offered Stipulation, the Court DENIES Plaintiff's Motion to Compel. Docket no. 124. It is so ORDERED.

SIGNED this 24th day of March, 2015.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[4] Labaty's Reply (docket no. 129 at 4-5) and third motion to compel discovery (docket no. 128-1) mentions Labaty's various counsel have incurred over $400,000 in attorneys' fees to date. Combined, various Defendants have no doubt incurred much more than that. *See* docket no. 111-1 (detailing twenty-three depositions taken, and more have been conducted since). Labaty's claims, absent punitive damages, are for $160,000. Equity dictates not extending discovery, which would add still more expense and attorneys' fees, to further explore one aspect of one claim.